UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| LEADING EDGE MARKETING, INC., <br> d/b/a ProSource Wholesale Floorcovering, <br><br> Plaintiff, <br><br> v. <br><br> BUILDERS PROSOURCE, LLC, <br> d/b/a BUILDERS PROSOURCE, <br><br> Defendant. | 3:09-cv-704-CMC <br><br> ORDER GRANTING PLAINTIFF'S <br> MOTION FOR DEFAULT <br> JUDGMENT AND PERMANENT <br> INJUNCTION |

This matter is before the court on the motion of Plaintiff Leading Edge Marketing, Inc., d/b/a ProSource Wholesale Floorcovering ("Plaintiff" or "LEMI"), for entry of default judgment and permanent injunction against Defendant Builders ProSource, LLC, d/b/a Builders ProSource ("Defendant" or "Builders ProSource"). The court held a hearing on this motion on August 20, 2009, at 10:00 a.m. Mark L. Jameson, LEMI's Vice President of Franchise Development, testified during the hearing. ("Jameson Testimony").

Defendant, although properly served, has failed to answer LEMI's first amended verified complaint in this action. Defendant was also served notice of the hearing on Plaintiff's motion for default judgment and permanent injunction held on August 20, 2009, but failed to appear. Having reviewed the pleadings, affidavits, matters of record, and having heard testimony and argument of counsel, the court finds the following:

1. LEMI filed its first amended verified complaint against Builders ProSource on March 20, 2009. (Dkt. No. 5).

2. LEMI filed its motion for default judgment and permanent injunction on June 19,

1

2009. (Dkt. No. 16).

3. On June 25, 2009, default was entered against Builders ProSource. (Dkt. No. 22).

4. On June 30, 2009, this court entered an order requesting clarification and supplementation to LEMI's previously filed motion for default judgment and permanent injunction. (Dkt. No. 26).

5. LEMI filed a clarification and supplementation to its previously filed motion for default judgment and permanent injunction on July 22, 2009. (Dkt. No. 31).

6. The court finds in favor of Plaintiff and enters judgment against Defendant on Count I of Plaintiff's first amended verified complaint, Dkt. No. 5.

7. LEMI has waived its claim for damages (other than for attorneys' fees and costs) on Count I and dismisses its claims in Counts II through VI of its first amended verified complaint. (Dkt. No. 31 at 4, ¶12).

8. LEMI has requested attorneys' fees and costs incurred in enforcing its trademark rights against Defendant. (*Id.*; Jameson Testimony).

9. Further, Plaintiff's motion seeks a permanent injunction under the federal Lanham Act (15 U.S.C. § 1114 and 15 U.S.C. § 1125 *et seq.*). (Dkt. No. 16).

10. The court "may grant injunctive relief to the owner of a registered trademark whose rights to the mark have been infringed on by another's use of a copy or colorable imitation that is 'likely to cause confusion, or to cause mistake, or to deceive.'" *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463 (4th Cir. 1996) (quoting 15 U.S.C. § 1114(1)).

11. "'The ultimate question, for purposes of determining liability in trademark infringement actions, is whether there exists a likelihood that an appreciable number of ordinarily

prudent purchasers will be misled, or indeed simply confused, as to the source of the goods in question.'" *Id.* (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990)). "The test is *likelihood* of confusion; evidence of actual confusion is unnecessary." *Id.* (emphasis in original).

12. Before a permanent injunction may properly issue, the movant must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). *See also Super Duper, Inc. v. Mattel, Inc.*, 2009 U.S. Dist. LEXIS 28751, *3 (D.S.C. March 31, 2009).

13. This court finds that Plaintiff has established that it has suffered an irreparable injury and likelihood of confusion (and instances of actual confusion):

    A. As set forth in LEMI's first amended verified complaint and verified by Mark Jameson, Defendant continues to use, without Plaintiff's consent, the "ProSource" proprietary marks, registered marks, and other intellectual property, and Defendant's use of Plaintiff's marks creates confusion, deception, or mistake among an appreciable number of ordinary buyers. (Dkt. No. 5, at ¶¶ 10, 13-15, 18, 20; Jameson Testimony). Such Proprietary Marks include the franchise name "ProSource"; and two federally registered trademarks for PROSOURCE, Reg. Nos. 1,652,792 and 1,678,921 (collectively referred to as "Registered Marks").

    B. Plaintiff has established that the use by Plaintiff and its authorized distribution chain of the "ProSource" marks to indicate that products came from Plaintiff and/or their authorized

3

distribution channel are of such quality and have been used for such duration that the public has come to identify goods bearing "ProSource" marks as originating from Plaintiff. (Dkt. No. 5, at ¶¶ 6-12; Jameson Testimony).

   C. Plaintiff has established that Defendant intentionally took actions designed to convince others that Defendant's use of the "ProSource" name and marks indicated an affiliation with Plaintiff and its products and services, and intentionally represented that Defendant is affiliated in some manner with Plaintiff and Plaintiff's products and services. (See Dkt. No. 5, at ¶¶ 13-15; Dkt. No. 16, at ¶¶ 8-9).

   D. Plaintiff has established actual confusion in the minds of the consuming public. (Jameson Testimony). A franchisee of Plaintiff operating in Columbia, S.C. notified Plaintiff of Defendant's use of ProSource marks in early 2009 after being contacted by suppliers and customers of Defendant. These contacts indicate actual confusion by the public. For example, suppliers of Defendant contacted the franchisee to collect debts owed by Defendant, believing Plaintiff's franchisee (1) to be Defendant or (2) to be associated with Defendant. Customers of Defendant contacted the franchisee to complain about unsatisfactory products or services provided by Defendant, indicating customers' confusion between the businesses of Plaintiff and Defendant. (Jameson Testimony).

 14. The court further finds that monetary damages are inadequate to compensate Plaintiff for its injury due to Defendant's use of Plaintiff's marks. The customer confusion indicated cannot be corrected by damages paid post-infringement, and if allowed to continue, future infringement would irreparably damage Plaintiff's reputation. The effect on a customer's perception of the quality of products and services associated with Plaintiff and the loss of Plaintiff's control over its

own trade marks and trade names, cannot be easily or completely remedied through an award of damages. Although an agent of Defendant has indicated to Plaintiff's counsel that it is changing its name to cease use of the ProSource name, Jameson testified that the "ProSource" name still appears in connection with Defendant on the Internet as recently as thirty days ago. (Jameson Testimony). The court finds a permanent injunction necessary to prevent continuing and future harm to Plaintiff.

15. Balancing the hardships between Plaintiff and Defendant also indicates that a permanent injunction is appropriate. Plaintiff has limited its business to the floor coverings and related products market, and focuses all of its efforts on this target market. (Dkt. No. 5, at ¶¶ 6-12). Plaintiff stands to lose the goodwill and customer base it has grown through investment in advertising and through marketing and the provision of good quality products and services to its customers over many years. Defendant, on the other hand, could have easily chosen a different name.

16. Finally, the public interest would not be disserved by a permanent injunction as the public interest favors healthy competition, but does not favor unfair competition. In this case, the public interest favors granting the injunction because the public interest favors the protection of holders of valid trade names and trademarks against misuse by competitors. Moreover, the public interest is also served when a company's unlawful conduct is ordered to be suspended. *See Super Duper, Inc.*, 2009 U.S. Dist. LEXIS 28751, *5.

Accordingly, Plaintiff having established all elements necessary for the granting of a permanent injunction, Plaintiff's motion for permanent injunction is hereby GRANTED. Until and

unless otherwise ordered by this court, Defendant Builders ProSource, LLC, d/b/a Builders ProSource, is hereby ordered to and shall:

    A.    Cease and desist from using, in any manner or to any degree, the Proprietary Marks, Registered Marks, or the ProSource Business System and from violating any right of Leading Edge Marketing, Inc. in the Proprietary Marks, Registered Marks and the ProSource Business System;

    B.    Remove all signage which includes the Proprietary Marks or any marks confusingly similar thereto;

    C.    Cease and desist from any further manufacture, use, distribution, display or sale of any products or services bearing or used in connection with the Proprietary Marks, or any other mark, name, design, or trade dress confusingly similar or substantially similar to any mark, name, design or trade dress of LEMI;

    D.    Cancel any corporate and fictitious name registrations which include the Proprietary Marks or any marks confusingly similar thereto and within 30 days of the date of this order file with the court and serve on LEMI a copy of such cancellation from the appropriate Secretary of State's office;

    E.    Cancel any yellow pages and similar directory listings, in print, electronic or otherwise, which contain or reference the Proprietary Marks or any marks confusingly similar thereto;

    F.    Remove all references to the Proprietary Marks or any marks confusingly similar thereto from any Internet web sites and web pages;

    G.    Deliver to LEMI, at Defendant's sole expense, within 30 days of the date of this

order, Defendant's current inventory of infringing labels and remove the Proprietary Marks or any marks confusingly similar thereto from all merchandise;

H. Deliver to LEMI, at Defendant's sole expense, within 30 days of the date of this Order, Defendant's supply of all promotional and advertising materials ("marketing materials") such as, but not limited to, flyers, posters, price lists, order forms, printing plates, printing dyes, silk screens, matrices, tapes, discs and the like for printing the Proprietary Marks or any marks confusingly similar thereto, on marketing materials; and

I. Permit LEMI's field business consultant based in Orlando, Fl. to access Defendant's store to ascertain the extent of Defendant's compliance with this order and injunction.

## CONCLUSION

The court grants Plaintiff's motion for default judgment and permanent injunction for trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125(a) (Lanham Act §§ 32 and 43(a)) (Count I of First Amended Verified Complaint). The court also grants Plaintiff's request for attorneys' fees. The amount of attorneys' fees will be determined by the court upon petition by Plaintiff. All other causes of action and claims for relief are dismissed.

**IT IS SO ORDERED.**

                                               s/ Cameron McGowan Currie
                                               CAMERON MCGOWAN CURRIE
                                               UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
August 21, 2009